UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LANDRIEU CONSTRUCTION, INC.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 09-3418** |
| **DRC EMERGENCY SERVICES, LLC ET AL.** | * | **SECTION "L" (3)** |

## ORDER & REASONS

Currently pending before this Court are Defendants' Motion for Partial Summary Judgment (Rec. Doc. 33) as to Plaintiff's claim under the Louisiana Unfair Trade Practices Act and Defendants' Motion in Limine to Exclude Evidence and Testimony of Unrelated Third Parties to Support Plaintiff's Louisiana Unfair Trade Practices Act claim (Rec. Doc. 35). For the following reasons, IT IS ORDERED that Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. IT IS FURTHER ORDERED that Defendants' Motion in Limine IS GRANTED.

### I. BACKGROUND

This case arises out of a dispute over payment for work done by Plaintiff, Landrieu Construction, Inc. ("Landrieu"), on various disaster related construction jobs in the aftermath of Hurricane Katrina. After the storm, Defendant, DRC Emergency Services, LLC ("DRC"), was retained by Plaquemines Parish and the City of New Orleans to complete a number of projects. DRC then subcontracted much of this work to Defendant, Cahaba Disaster Recovery, LLC ("Cahaba"), who in turn subcontracted certain projects to Landrieu. These projects included: (1) a silt removal project on the Duvic Canal in Plaquemines Parish; (2) a debris removal job on

Highway 90 in Orleans Parish; and (3) work on a levee breach.

After receiving this subcontract, Plaintiff terminated all other previous engagements and focused solely on the work provided by DRC and Cahaba. Landrieu worked exclusively on these projects until September of 2008 when it became evident that Landrieu was in a dire financial situation. Landrieu alleges that this financial crisis was due to the specific conduct of the Defendants, including: (1) the failure to pay Landrieu amounts due for work that had already been completed; (2) the deduction of expenses above and beyond what had been contemplated by the subcontract; (3) the withholding of amounts for retainage in excess of the amount contemplated by the subcontract; (4) the failure to inform Landrieu of certain costs that would be associated with the projects; (5) causing Landrieu to relocate its equipment frequently at their own expense; (6) causing Landrieu to sustain significant expense for equipment rental while simultaneously refusing to give Landrieu the authority to continue working.

In September of 2008, Landrieu removed their equipment from the construction sites and requested payment for work that had already been completed. Additionally, Landrieu informed DRC and Cahaba that it had run out of money and would require payment in order to cover checks that had already been issued for payroll expenses in the amount of $52,689.15. At this time, the owner of Landrieu Construction, Gary Landrieu, signed a sworn affidavit whereby he agreed to provide DRC and Cahaba with a list creditors. He also agreed to allow DRC and Cahaba to negotiate directly with these creditors, to settle debts with them, and to treat the amounts paid as a credit to the amount owed to Landrieu. DRC and Cahaba then proceeded to negotiate with these vendors and were able to settle debts owed to six of nine creditors. Some of these creditors received the full amount owed to them while others accepted less. DRC and

Cahaba also fowarded $52,689.15 to Landrieu for payroll expenses. Subsequently, the Defendants claimed entitlement to a credit for these amounts paid and advanced to Landrieu. However, in a "side-by-side" analysis prepared by Defendants and provided to Landrieu, an apparent error was made and the Defendants claimed a credit of $100,000 more than had actually been paid.

The parties dispute the nature of the circumstances surrounding Gary Landrieu's signing of the affidavit, as well as the nature of the negotiations between DRC, Cahaba and Landrieu's creditors. Plaintiff alleges that Gary Landrieu was forced to sign the affidavit due to his precarious financial difficulties and that the subcontractors were intimidated and forced into accepting amounts less than they were owed. Furthermore, Plaintiff claims that Defendants made certain statements to Landrieu's creditors which were designed to destroy any goodwill that Plaintiff may have had and to force Plaintiff out of business. Defendants, on the other hand, claim that their conduct was intended to help Plaintiff escape from financial troubles by settling debts on Landrieu's behalf.

In early 2009, a dispute arose regarding the amount still owed to Landrieu, and the Plaintiff filed the instant suit in Civil District Court for the Parish of Orleans. On April 30, 2009, the case was removed to this Court. The Plaintiff's complaint asserted a claim for breach of contract against each Defendant, as well as a claim for penalties and attorney's fees pursuant to Louisiana Revised Statutes § 9:2784. Additionally, the complaint asserted a cause of action under the Louisiana Unfair Trade Practices Act ("LUTPA"), which provides for treble damages under certain circumstances. At this point, Plaintiff asserts that they are entitled to payment of at least $122,646.11 under their contract with DRC and Cahaba. In addition, Plaintiff takes the

3

position that they are entitled to attorney's fees, penalties, and treble damages. Altogether Plaintiff claims that they are entitled to over $500,000. Defendants have also asserted counterclaims against the Plaintiff for unjust enrichment, detrimental reliance, fraud/fraud in the inducement, and indemnity. All of these asserted counterclaims arise from the document that allegedly authorized the Defendants to negotiate with Plaintiff's subcontractors and suppliers.

## II. PRESENT MOTIONS

### A. Motion for partial summary judgment

DRC and Cahaba filed the instant motion seeking partial summary judgment on Plaintiff's LUTPA claims. First, they argue that the undisputed facts show their conduct does not constitute a violation of the LUTPA. Second, they argue that Landrieu cannot assert LUTPA violations on behalf of others. Third, they take the position that the alleged conduct did not damage Landrieu in any way. Fourth, they claim that the LUTPA does not allow for recovery based on otherwise failed tort claims. Finally, they allege that Landrieu is not entitled to treble damages under the statute because the notice requirement has not been met.

Landrieu has responded and asserts that factual issues remain regarding the Defendant's conduct, whether that conduct constituted a violation of the LUTPA, and the nature and extent of damages sustained as a result. Further, they assert that on April 29, 2009, the Office of the Attorney General mailed a "Notice of R.S. 51:1401 Complaint" to the Defendants, thereby satisfying LUTPA's notice requirement.

### B. Motion in limine

DRC and Cahaba have also moved to exclude evidence and testimony of other subcontractors who were not involved in the instant case and who claim that the Defendants

have employed similar conduct in dealing with their companies. Defendants assert that such evidence is irrelevant and would be overly prejudicial. Plaintiff has responded and takes the position that this evidence is relevant and admissible "to prove a systematic pattern of motive and intent of the defendants." *Plaintiff's Memorandum in Opposition to Defendants' Motion in Limine*, Rec. Doc. 41, at *2.

## III.   LAW & ANALYSIS

Summary judgment is only appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

### A.   The Louisiana Unfair Trade Practices Act

The LUTPA provides for both a private cause of action and a cause of action brought by the Attorney General. The private cause of action, established in section 1409, provides that "[a]ny person who suffers an ascertainable loss of money or movable property, corporeal or

5

incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually ... to recover actual damages." La. Rev. Stat. Ann. § 51:1409. The conduct declared unlawful by section 1405 includes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 51:1405.

The LUTPA does not specifically define the conduct that constitutes an unfair trade practice, but instead leaves the determination "to the courts to decide on a case-by-case basis." *Chemical Distribs., Inc. v. Exxon Corp.*, 1 F.3d 1478, 1485 (5th Cir. 1993). Courts have determined that an unfair trade practice is "one that is 'unethical, oppressive, unscrupulous, or substantially injurious.'" *Id.* (quoting *Bolanos v. Madary*, 609 So. 2d 972, 977 (La. App. 1992)). Furthermore, "mere negligence is not prohibited," but "fraud, misrepresentation, deception, and similar conduct are." *Chemical Distribs., Inc.*, 1 F.3d at 1485. The Fifth Circuit has explained that "an intent to eliminate the competition does not by itself violate LUTPA. Rather, the statute forbids businesses to destroy each other through improper means." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419. 1423 (5th Cir. 1993). Moreover, "the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Id.* at 1422.

Plaintiff's allegations, as the Court understands them, are that the Defendants knowingly and intentionally breached their contract in bad faith by refusing to pay for work that had already been completed at Landrieu's expense. According to Plaintiff, Defendants did this in order to force the Plaintiff into a desperate financial situation so that Landrieu would have no choice but to allow direct negotiations between Defendants and Landrieu's subcontractors. Allegedly, this

6

was done in an effort to destroy Landrieu's reputations with their subcontractors, and ultimately Landrieu's business. The Defendants clearly dispute these allegations.

The Plaintiff does not appear to be asserting a claim for damages on behalf of any unrelated third parties. Instead, Landrieu clearly seeks to recover their own damages by offering evidence of Defendants relationships with third parties to prove their own claims. While the LUTPA would not allow a plaintiff to stand in the shoes of its' third party subcontractors, or anyone else for that matter, it certainly provides a cause of action for a plaintiff to recover its' own damages. Furthermore, Plaintiff's claims appear to allege more than a simple breach of contract. The Plaintiff asserts that Defendants breached the contract, in bad faith, as part of a larger plan to destroy their business by refusing payment that was allegedly owed for work that *had already been performed*. It is not hard to see that such actions would have been likely to place Landrieu in a serious financial predicament. Accordingly, if these accusations are proven at trial, a jury could certainly conclude that this conduct rises to the level of behavior that is "unethical, oppressive, unscrupulous, or substantially injurious." *Bolanos*, 609 So. 2d at 977.

Furthermore, the parties do not cite to any case in which a court held that refusal to pay for work that had already been performed cannot, as a matter of law, constitute a LUTPA violation. In this case, the nature of the circumstances surrounding Gary Landrieu's signing of the affidavit, as well as the nature of the negotiations between DRC and Cahaba and Landrieu's creditors are disputed. In addition, the parties dispute the nature and extent of the damages suffered by Landrieu as a result of any alleged unfair trade practices. In light of these significant factual disputes, it is appropriate to allow a jury to determine whether DRC and Cahaba's conduct violated the LUTPA.

However, at this stage, it is clear that even if Plaintiff is able to prove that a LUTPA violation occurred, treble damages are inappropriate. The LUTPA provides that "[i]f the Court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages sustained." La. Rev. Stat. § 51:1409. The LUTPA, being penal in nature, must be construed strictly. *Joseph v. Hendrix*, 536 So. 2d 448, 450 (La. App. 1 Cir. 1988). The text of the statute is clear, and courts have agreed, that in order for a defendant to be held liable for treble damages, the alleged unfair trade practice must have continued after the defendant received notice from the director or the attorney general. *Konecranes, Inc. v. Robaina*, Case No. 98-2997, 2000 WL 41208, at *3 (E.D. La. 2000) ("In the case at hand, any alleged [unfair trade practice] occurred *before* the Defendant was notified of the claim pending against him regarding a potential violation of the [LUTPA]." (emphasis in original)); *Gour v. Daray Motor Co.*, 373 So. 2d 571, 578 (La. App. 3d. Cir. 1979) ("[The LUTPA] provides for the recovery of treble damages, if an unfair or deceptive practice is used after the offending party is put on notice.").

In this case, it appears that notice was mailed to DRC and Cahaba by the Attorney General on April 29, 2009. This notice was provided only after Plaintiff had initiated the instant lawsuit, and after the occurrence of all of the Defendants alleged conduct that is the basis of Plaintiff's LUTPA claim. Plaintiff has produced no evidence that Defendants knowingly continued to engage in any unfair trade practices after receiving notice. Accordingly, they are not entitled to recover treble damages. Summary judgment in favor of DRC and Cahaba is therefore granted on this point.

**B.     Motion in limine**

DRC and Cahaba have also moved to exclude evidence and testimony of other subcontractors who were not involved in the instant case and who claim that the Defendants have employed similar conduct in dealing with their companies.  The Federal Rules of Evidence provide that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Fed. R. Evid. 403.  Clearly, this evidence is at least somewhat relevant and probative.  However, introduction of this evidence is likely to unfairly prejudice the jury by leading them to draw conclusions about the Defendants' actions in this case based on their past conduct.  This danger substantially outweighs the probative value of the challenged evidence.

Additionally, this evidence would not be admissible under Rule 404(b) which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  Although the Plaintiff argues that the evidence in question provides proof of Defendants' plan and intent to destroy Landrieu's business, the truth is that the alleged conduct is not particularly complex.  It can be, and should be, proven through evidence of the Defendants conduct in this case only.  The other instances are substantially different and would in effect necessitate a trial within a trial which would be prejudicial and confusing.  Accordingly, Defendants motion in limine must be granted in order to avoid the danger of unfair prejudice that the introduction of this propensity evidence would present.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Partial Summary Judgment (Rec. Doc. 33) is GRANTED IN PART and DENIED IN PART. IT IS FURTHER ORDERED that Defendants' Motion in Limine (Rec. Doc. 35) IS GRANTED.

New Orleans, Louisiana, this 29th day of April, 2010.

_____
UNITED STATES DISTRICT JUDGE